**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE: DENNIS A. PERRY**                              **CIVIL ACTION**

                                                        **CASE NO. 23-5265**
                                              **c/w        23-5266**
                                                        **23-5341**
                                                        **25-304**
                                                        **25-305**
                                                        **25-865**

                                              **SECTION: "G"(2)**

**ORDER AND REASONS**

Before the Court are Bankruptcy Appellants Dr. William Alden, Perry Associates, LLC,

Crescent City Property Redevelopment Association, LLC, Crescent City Medical Services, Inc.,

Private Connection Auto, LLC, 4330 State Street Drive, LLC, and 1100 South Jefferson Davis

Parkway, LLC's (collectively, the "Alden Entities") consolidated appeals from the United States

Bankruptcy Court's Orders adjudicating a Reconventional Demand filed by Debtor Dennis A.

Perry's ("Perry") bankruptcy case.[1] Also pending before the Court are Perry's cross-appeals[2] and

the Alden Entities' Motion to Dismiss for lack of jurisdiction.[3] The Court has consolidated all of

the appeals,[4] and the issues have been thoroughly briefed by the parties. Considering the briefs

filed by the parties, the record and the applicable law, for the reasons that follow, the Court affirms

the Bankruptcy Court's Orders in part and reverses in part. The Bankruptcy Court's Orders are

---

[1] Case Nos.: 23-5265, 23-5266, 23-5341, 25-304, 25-305, 25-865. Case No. 23-5341 is an appeal filed by Darryl Fish. Fish has not filed an appellate brief.

[2] Case No. 25-304, Rec. Doc. 7; Case No. 25-305, Rec. Doc. 6.

[3] Rec. Doc. 24.

[4] Rec. Doc. 14.

1

reversed to the extent that they find the Reconventional Demand only asserted fraud and Louisiana Unfair Trade Practices Act ("LUTPA") claims against Dr. Alden individually. The case is remanded to the Bankruptcy Court for additional proceedings on: (1) whether any of the Alden Entities should be held jointly liable with Dr. Alden for fraud or violations of LUTPA and (2) whether Perry is entitled to attorneys' fees incurred in successfully defending against the Alden Entities' appeals and, if so, the proper amount of those fees.

## I. Background

On November 30, 2020, Perry filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[5] In response to the filing, the Alden Entities filed seven Proofs of Claim related to the multiple business and personal ventures between Perry and the Alden Entities.[6] A state court case the Alden Entities filed against Perry and Perry's business, Deals on Wheels, LLC, was also removed to the Bankruptcy Court (the "Adversary Proceeding").[7] Perry filed affirmative defenses to the Adversary Proceeding and a Reconventional Demand against the Alden Entites raising claims of fraud and violations of LUTPA.[8] Perry also filed objections to the seven Proofs of Claim[9] and a motion to terminate the joint venture agreements and trigger the sale provisions therein.[10] These disputes concern numerous loans and joint venture agreements between Perry and Dr. Alden.

---

[5] Bankr. Case No. 20-11986, Rec. Doc. 1.

[6] Bankr. Case No. 20-11986, Proofs of Claim Nos. 25, 26, 27, 28, 29, 31, 32.

[7] Bankr. Case No. 21-1002, Rec. Doc. 1.

[8] Bankr. Case No. 21-1002, Rec. Docs. 20, 30-1.

[9] Bankr. Case No. 20-11986, Rec. Docs. 69, 71, 73, 75, 77, 81, 83, 156.

[10] Bankr. Case No. 20-11986, Rec. Doc. 79.

From March 28, 2022 through April 5, 2022, the Bankruptcy Court held a trial on liability in Perry's main bankruptcy case and the claims alleged in Adversary Proceeding.[11] Prior to trial, all parties agreed that the issue of damages would be bifurcated and determined at a second trial after the Bankruptcy Court's determination of liability.[12] The Bankruptcy Court issued an Original Memorandum Opinion and Order on September 1, 2023.[13] On September 12, 2023, the Alden Entities filed notices of appeal, which were allotted to this Court.[14] Perry then filed a motion to amend the judgment, and the Bankruptcy Court issued an Amended and Superseding Memorandum Opinion and Order on November 21, 2023 (the "Liability Opinion").[15]

Dr. Alden claimed the joint venture agreements gave him ownership interests in several pieces of property that Perry claimed to be part of his bankruptcy estate: (1) a rental home located at 4021 9th Street in Marrero, Louisiana; (2) an empty lot located at 4025 Westbank Expressway in Marrero, Louisiana; (3) a rental home located at 3065 South Palm Drive in Slidell, Louisiana; (4) a rental home located at 3303 Bonfouca Drive in Slidell, Louisiana; and (5) 27420 Sampson Drive in Lacombe, Louisiana.[16] The Bankruptcy Court found that the Alden Entities had no

---

[11] Bankr. Case No. 20-11986, Rec. Doc. 460.

[12] *Id.*

[13] Bankr. Case No. 20-11986, Rec. Doc. 400. The original opinion did not rule on the claims Perry raised in the Reconventional Demand.

[14] Case No. 23-5265 (filed by appellants Perry Associates, LLC, Crescent City Property Redevelopment Association, LLC, Crescent City Medical Services, Inc., Private Connection Auto, LLC, and William W. Alden on September 12, 2023); Case No. 23-5266 (filed by appellants Perry Associates, LLC, Crescent City Property Redevelopment Association, LLC, Crescent City Medical Services, Inc., Private Connection Auto, LLC, and William W. Alden on September 12, 2023); Case No. 23-5341 (filed by appellant Darryl Fish on September 15, 2023); Case No. 23-5343 (filed by appellant David Edward Cook on September 15, 2023, and voluntarily dismissed on April 15, 2024).

[15] Bankr. Case No. 20-11986, Rec. Doc. 433.

[16] *Id.*

ownership interest in the two properties located in Marrero.[17] With respect to the Palm Drive, Bonfouca, and Sampson properties, the Bankruptcy Court ordered that the properties be sold, pursuant to the terms of the joint venture agreements, with the proceeds from the sale of each property to be divided equally between Perry and Perry Associates.[18]

The Bankruptcy Court also sustained six claim objections filed by Perry and disallowed six Proofs of Claim filed against the estate in Perry's bankruptcy case.[19] The Bankruptcy Court sustained in part and overruled in part Perry's objection to Proof of Claim No. 31, filed by Dr. Alden, and allowed a general unsecured claim against the estate in the amount of $6,700.[20] The Bankruptcy Court further sustained in part and overruled in part Perry's objection to Proof of Claim No. 32, filed by Dr. Alden, and allowed a general unsecured claim against the estate in the amount of $12,000.[21] These rulings also resolved the claims asserted by the Alden Entities in the Adversary Proceeding.[22] The Bankruptcy Court ruled in favor of Perry on all counterclaims raised in his Reconventional Demand.[23] The Bankruptcy Court found that Dr. Alden was liable to Perry for fraud and violations of LUTPA.[24]

---

[17] *Id.* at 55–57.

[18] *Id.* at 54–55.

[19] *Id.* at 59–60. Specifically, the Bankruptcy Court disallowed the following proofs of claim: (1) Proof of Claim No. 22 filed by Darryl Fish; (2) Proof of Claim No. 25 filed by Dr. Alden; (3) Proof of Claim No. 26 filed by Dr. Alden; (4) Proof of Claim No. 27 filed by Private Connection Auto, LLC; (5) Proof of Claim No. 28 filed by Private Connection Auto, LLC; and (6) Proof of Claim No. 29 filed by Crescent City Property Redevelopment Association, LLC.

[20] *Id.* at 60.

[21] *Id.*

[22] *Id.* at 61.

[23] *Id.* at 61–62.

[24] *Id.*

The trial on damages was held before the Bankruptcy Court on April 15 and 16, 2024.[25] This Court administratively closed the original appeals pending ruling by the Bankruptcy Court on the outstanding damages issues.[26] On January 28, 2025, the Bankruptcy Court issued a ruling on the outstanding damages issues (the "Damages Opinion").[27] The Bankruptcy Court awarded damages in favor of Perry and against Dr. Alden in the amount of $586,752.36 for Dr. Alden's violations of LUTPA.[28]

Thereafter, the Alden Entities filed two new appeals, both related to the Bankruptcy Court's January 28, 2025 Order.[29] Perry filed post-trial Motions to Amend the Damages Opinion, and the Bankruptcy Court's Judgment became final on April 22, 2025, after the Bankruptcy Court denied Perry's final motion.[30] On May 8, 2025, Perry and Deals on Wheels, LLC, filed two Notices of Cross Appeal.[31] All of the appeals were reopened and consolidated by this Court on May 19, 2025.[32] All appeals arise from the original bankruptcy proceeding and the bifurcated trial, which resulted in the Liability Opinion, Damages Opinion, and denials of reconsideration.

The Alden Entities filed their appellant brief on August 18, 2025.[33] On that same day, the

---

[25] Bankr. Case No. 20-11986, Rec. Doc. 510.

[26] Case No. 23-5265, Rec. Doc. 12; Case No. 23-5266, Rec. Doc. 12; Case No. 23-5341, Rec. Doc. 8.

[27] Bankr. Case No. 20-11986, Rec. Doc. 616.

[28] *Id.* at 22.

[29] Case Nos. 25-304, 25-305.

[30] Bankr. Case No. 20-11986, Rec. Doc. 665.

[31] Case No. 25-304, Rec. Doc. 7; Case No. 25-305, Rec. Doc. 6.

[32] Rec. Doc. 14.

[33] Rec. Doc. 23.

Alden Entities also filed a Motion to Dismiss for Lack of Jurisdiction.[34] Perry filed an opposition to the Motion to Dismiss for Lack of Jurisdiction on August 26, 2025.[35] The Alden Entities filed a reply brief on September 1, 2025.[36] Perry filed an opposition to the appellant brief and a cross-appeal brief on September 17, 2025.[37] The Alden Entities filed a reply brief on October 1, 2025.[38] The Alden Entites filed an opposition to the cross-appeal brief on October 15, 2025.[39] Perry filed a cross-reply brief on October 29, 2025.[40]

## II. Issues Raised on Appeal

### A.    *The Original Appeals by the Alden Entities*

#### 1.    The Alden Entities' Arguments in Support of Original Appeals

The Alden Entities raise four issues in these consolidated appeals. First, the Alden Entities contend the Bankruptcy Court lacked subject matter jurisdiction over Perry's LUTPA claims because Perry did not have standing to bring those claims against Dr. Alden.[41]

Second, the Alden Entities argue that the Bankruptcy Court lacked subject matter jurisdiction over Perry's LUTPA claims because the claims were prescribed or perempted at the time of the Reconventional Demand.[42] These first two arguments are also the bases of the Alden

---

[34] Rec. Doc. 24.

[35] Rec. Doc. 25.

[36] Rec. Doc. 26.

[37] Rec. Doc. 27.

[38] Rec. Doc. 28.

[39] Rec. Doc. 32.

[40] Rec. Doc. 33.

[41] Rec. Doc. 23 at 32.

[42] *Id.*

Entities' Motion to Dismiss for Lack of Jurisdiction.[43]

Third, the Alden Entities assert that the Bankruptcy Court erred in finding that all of Perry's damages were caused by Dr. Alden.[44] The Alden Entities cite inconsistencies in Perry's testimony to support their argument that the Bankruptcy Court erred in finding Perry to be a "generally credible" witness.[45] The Alden Entities contend that the other lay witnesses who testified during the trial did not have any knowledge of Perry's financial difficulties, his floundering car business, his IRS debts, or the fact that Dr. Alden loaned Perry money.[46] The Alden Entities also argue that the Bankruptcy Court erred in crediting the testimony of Patrick Gros, an expert in accounting and financial analysis.[47] According to the Alden Entities, Gros's testimony was speculative, biased, inconsistent, used improper methodology, used improper calculations, and was borderline hypothetical.[48] For these reasons, the Alden Entities contend that the Bankruptcy Court erred in ruling that Perry suffered any damages because of Dr. Alden, much less the $586,752.36 in LUTPA damages awarded.[49]

Fourth, the Alden Entities assert that the Bankruptcy Court erred in finding that Dr. Alden committed fraud and/or forgery.[50] The Alden Entities contend that the Bankruptcy Court erred in

---

[43] Rec. Doc. 24.

[44] Rec. Doc. 23 at 32.

[45] *Id.* at 33–42.

[46] *Id.* at 42–45.

[47] *Id.* at 45.

[48] *Id.*

[49] *Id.* at 55.

[50] *Id.*

crediting the opinions of Perry's handwriting expert over the Alden Entities' handwriting expert.[51]

### 2.    Perry's Arguments in Opposition to Original Appeals

Perry responds to each of the Alden Entities' arguments. First, Perry contends he has standing to bring his claim against Dr. Alden under LUTPA as relief is available to "any person" and not limited in standing to "consumers and competitors."[52] Alternatively, Perry contends that he and Dr. Alden became business competitors under the Joint Venture Agreements when Dr. Alden refused to sell the properties as required by the Joint Venture Agreements.[53]

Second, Perry contends that prescription was interrupted due to Dr. Alden's ongoing commission of fraud against Perry.[54] According to Perry, at the time the bankruptcy case was filed Dr. Alden was actively committing fraudulent and deceptive acts against Perry by: (1) continuing to maintain ownership and control over the Westbank Expressway Lot with a forged Quit Claim Deed; (2) continuing to maintain control over the 9th Street property by using the forged Procuration and 9th Street Joint Venture Agreement; (3) refusing to release the Collateral Mortgage after being paid in full and using that fact to leverage control over Perry to force him to renovate Palm without compensation; and (4) refusing to sell the joint venture properties over which he maintained full control despite the existence of the joint venture agreements.[55] Perry points out that all of the documents that the Bankruptcy Court concluded were forgeries were

---

[51] *Id.* at 56–58.

[52] Rec. Doc. 27 at 44–46.

[53] *Id.* at 46.

[54] *Id.* at 47.

[55] *Id.* at 41–42, 48–52.

8

attached to Dr. Alden's proofs of claim as a means to recoup funds from Perry.[56] By continuing to assert the forged documents as a basis for recovery, Perry argues that Dr. Alden continues to violate the statute and prescription was thus interrupted.[57]

Third, Perry argues his emotional and financial damages were caused by Dr. Alden.[58] Perry contends that the evidence established that Dr. Alden: (1) committed fraud and forgery to deprive Perry from the use of his properties; (2) refused to release the Collateral Mortgage encompassing Perry's home and other properties; (3) filed two state court actions against Perry in different forums; and (4) forged documents that stopped Perry from evicting Darryl Fish from the 9th Street property.[59] Perry contends that the Bankruptcy Court correctly held that he suffered damages at the hands of Dr. Alden.[60] Perry submits that the awarded damages should have been higher than $586,752.36 based upon Dr. Alden's outrageous behavior.[61]

Fourth, Perry contends that the evidence established that Dr. Alden committed fraud and forgery.[62] Perry points out that the Bankruptcy Court considered the testimony and reports filed by the two competing expert witnesses and concluded that Perry's expert witness's methodology and conclusions were correct.[63] Perry argues that the Bankruptcy Court's findings were supported by

---

[56] *Id.* at 51.

[57] *Id.*

[58] *Id.* at 52–53.

[59] *Id.* at 53.

[60] *Id.* at 58.

[61] *Id.*

[62] *Id.* at 59.

[63] *Id.*

9

the record.[64]

### 3.   The Alden Entities' Arguments in Further Support of Original Appeals

The Alden Entities reiterate each of their four arguments in reply. First, the Alden Entities contend the subject matter jurisdiction issue is properly raised in the motion to dismiss.[65] Second, the Alden Entities contend that the Bankruptcy Court did not have jurisdiction over the LUTPA claims because Perry did not have standing to raise those claims and the claims were prescribed.[66] Third, the Alden Entities assert that the Bankruptcy Court erred in finding that all of Perry's damages were caused by Dr. Alden.[67] The Alden Entities assert that the Bankruptcy Court clearly erred in accepting the opinion of Perry's expert, Patrick Gros, that Perry suffered $586,752.36 in LUTPA damages.[68] Fourth, the Alden Entities assert that the Bankruptcy Court erred in finding that Dr. Alden committed fraud and/or forgery.[69]

### B.   *Cross-Appeal by Perry*

### 1.   Perry's Arguments in Support of Cross-Appeal

Perry raises five issues in the cross-appeal. First, Perry argues that he sought damages on his fraud claim, and the Bankruptcy Court erred in finding that the Reconventional Demand solely sought damages under LUTPA.[70]

Second, Perry asserts the Bankruptcy Court erred in failing to find that the Alden Entities

---

[64] *Id.* at 59–61.

[65] Rec. Doc. 28 at 5–7.

[66] *Id.*

[67] *Id.* at 7.

[68] *Id.* at 12–16.

[69] *Id.* at 17–20.

[70] Rec. Doc. 27 at 26–32.

were jointly and severally liable with Dr. Alden for fraud and resulting damages under LUTPA and state law.[71] Perry contends that Dr. Alden committed the fraud acting through his wholly owned limited liability companies and those companies cannot use the corporate veil as a "shield" to the damages arising from Dr. Alden's fraud.[72]

Third, Perry argues that the Bankruptcy Court erred in awarding only nominal damages in the amount of $5,000 for his emotional distress.[73] Although the Bankruptcy Court acknowledged that "the testimony of family and friends corroborated Perry's own testimony regarding the emotional distress and suicidal ideation he suffered," the Bankruptcy Court awarded modest damages because "Perry did not seek medical help or receive medical attention for emotional problems."[74] According to Perry, a medical expert is not required to establish emotional damages if the negligence complained of is within the realm of an ordinary lay person to understand.[75]

Fourth, Perry contends the Bankruptcy Court erred in failing to award him attorneys' fees and costs through the end of the trial, and instead only awarded fees and costs qualified prior to actual trial date.[76] Perry contends that a recovery of attorneys' fees and costs is mandatory upon the finding of a LUTPA violation.[77]

Fifth, Perry asserts he should be awarded cost and attorneys' fees incurred in this appeal.[78]

---

[71] *Id.* at 32.

[72] *Id.* at 33.

[73] *Id.* at 35–36.

[74] *Id.* at 36.

[75] *Id.* at 36.

[76] *Id.* at 38.

[77] *Id.*

[78] *Id.* at 39.

11

He asserts that a plaintiff who is awarded damages and attorneys' fees in an action under the LUTPA and then successfully defends an appeal of that action, is entitled to additional fees incurred in the connection with the appeal.[79]

### 2.   The Alden Entities' Arguments in Opposition to Cross-Appeal

The Alden Entities respond to each of Perry's arguments. Addressing Perry's first argument that the Bankruptcy Court failed to award damages for fraud, the Alden Entities point out that the only relief sought for the fraud claim was declaratory relief, which was awarded by the Bankruptcy Court.[80]

Second, the Alden Entities assert that it was appropriate for the Bankruptcy Court not to find the Alden Entities jointly and severally liable with Dr. Alden.[81] The Alden Entities point out that only three of these six entities are even identified in Perry's brief: Perry Associates, LLC, Crescent City Property Redevelopment Association, LLC, and Crescent City Medical Services.[82] Thus, the Alden Entities submit Perry's argument regarding the remaining three entities (Private Connection Auto, LLC, 4330 State Street Drive, LLC, and 1100 South Jeff Davis, LLC) is waived.[83] With respect to the three entities named, the Alden entities assert that the Bankruptcy Court granted Perry's requests for declaratory relief as to those entities.[84]

Third, the Alden Entities contend that the $5,000 award for pain and suffering should not

---

[79] *Id.*

[80] Rec. Doc. 32 at 11.

[81] *Id.* at 15.

[82] *Id.*

[83] *Id.* at 16.

[84] *Id.* at 16–17.

be increased.[85] The Alden Entities point out that Perry has failed to offer any relevant caselaw or quantum of prior general damage awards as guidance.[86] The Alden Entities assert it was well within the Bankruptcy Court's vast discretion to award Perry $5,000.00 for his untreated "mental suffering."[87]

Fourth, the Alden Entities argue that the Bankruptcy Court appropriately denied the Motions to Amend the Judgment, which sought to increase the award of attorneys' fees and costs.[88] The Alden Entities point out that Perry does not even discuss what amount in attorneys' fees and costs he is seeking.[89]

Fifth, the Alden Entities contend that Perry should not be awarded attorneys' fees and costs for the cross-appeal.[90] To the extent that this Court reverses any of the Bankruptcy Court's findings, the Alden Entities assert Perry is precluded from an additional award of attorneys' fees.[91]

### 3.     Perry's Arguments in Further Support of Cross-Appeal

Perry reiterates each of his prior arguments in the reply brief. First, Perry reasserts his argument that the Bankruptcy Court erred in concluding that Perry's Reconventional Demand only sought damages under LUTPA.[92] To the contrary, Perry asserts that the Reconventional Demand identifies Dr. Alden's liability for the commission of fraud under Paragraphs 85–91 and

---

[85] *Id.* at 19.

[86] *Id.* at 20.

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.* at 21.

[91] *Id.*

[92] Rec. Doc. 33 at 4.

subsequently requests damages based upon fraud in Paragraphs 106–109.[93] Perry contends that Paragraph 105 merely identifies LUTPA as an additional, alternative award for damages and attorneys' fees.[94] He asserts that Paragraph 105 does not limit the requested recovery to damages solely under LUTPA.[95]

Second, Perry reiterates that the Bankruptcy Court erred in failing to hold that the Alden Entities are jointly and severally liable for damages with Dr. Alden.[96] Perry contends that all of the entities are owned solely by Dr. Alden and all of these entities filed Proofs of Claim in the bankruptcy case.[97] Because Dr. Alden engaged in fraud as the sole/managing member of each entity, Perry contends that the entities should be found jointly and severally liable with Alden for fraud without the necessity of piercing the corporate veil.[98] Additionally, because the Bankruptcy Court found that Dr. Alden violated LUTPA, Perry submits that Dr. Alden had to be acting in his capacity of a business owner during the commission of the fraud.[99]

Third, Perry argues that the award for emotional distress should be increased from $5,000 to somewhere between $50,000 and $100,000.[100] Perry asserts Dr. Alden's actions were extortive, outrageous, and abhorrent, and as such, violated the LUTPA.[101] Perry cites an opinion by the

---

[93] *Id.* at 5.

[94] *Id.*

[95] *Id.*

[96] *Id.* at 6.

[97] *Id.* at 8.

[98] *Id.*

[99] *Id.* at 10.

[100] *Id.* at 12.

[101] *Id.*

Louisiana Court of Appeal for the Second Circuit affirming an award of $100,000 in non-pecuniary damages for a LUTPA violation.[102]

Fourth, Perry asserts that the attorneys' fees and costs should be increased from $209,496.04 to $242,101.04 for work performed in preparation for trial.[103]

Fifth, to the extent that Perry is successful in his defense of Dr. Alden's appeal, he asserts that he should be awarded additional attorneys' fees for this appeal, the amount of which is to be determined at a later date.[104]

### III. Jurisdiction

The Court has jurisdiction to hear these consolidated appeals pursuant to 28 U.S.C. § 158(a)(1), which authorizes appellate review of final orders, judgments and decrees of a United States Bankruptcy Court.[105] In appeals from bankruptcy courts, district courts sit as an appellate court.[106]

### IV. Standard of Review

A district court reviews a bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*.[107] A district court may affirm, reverse or modify a bankruptcy court's ruling, or remand the case for further proceedings.[108]

---

[102] *Id.* at 12 (citing *Gahdhi v. Sonal Furniture and Custom Draperies, LLC*, 49,959–CA (La. App. 2 Cir. 7/15/15), 192 So. 3d 783).

[103] *Id.* at 13.

[104] *Id.* at 14.

[105] 28 U.S.C. § 158(a)(1).

[106] *In re Lopez*, 897 F.3d 663, 668 (5th Cir. 2018).

[107] *In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000).

[108] While this language no longer appears in Rule 8013 of the Federal Rules of Bankruptcy Procedure, "logic still compels the same conclusion with respect to the appellate powers of the District Court." *In re Jones v. Pennymac*

## V. Discussion

### A.     *Issues Raised in the Original Appeals*

The Alden Entities raise four arguments in their original appeals. Each argument is addressed in turn.

#### 1.     Standing to Bring a LUTPA Claim

First, the Alden Entities contend the Bankruptcy Court lacked subject matter jurisdiction over Perry's LUTPA claims because Perry did not have standing to bring those claims against Dr. Alden.[109] Perry contends he has standing to bring his claim against Dr. Alden under LUTPA as relief is available to "any person" and not limited in standing to "consumers and competitors."[110] Alternatively, Perry contends that he and Dr. Alden became business competitors under the Joint Venture Agreements when Dr. Alden refused to sell the properties as required by the Joint Venture Agreements.[111]

Dr. Alden raised the standing issue for the first time on March 5, 2025, in opposition to Perry's Motion to Amend Judgment, which was filed by Perry in response to the Damages Opinion after the Alden Entities had already filed multiple appeals of the Liability Opinion.[112] During the hearing on that motion, the Bankruptcy Court declined to rule on the standing issue because the Liability Opinion was already on appeal.[113] Because standing is an essential component of federal

---

*Loan Servs., LLC*, No. 24-200, 2025 WL 786524, at *2 n.2 (S.D.N.Y. Mar. 12, 2025).

[109] Rec. Doc. 23 at 32.

[110] Rec. Doc. 27 at 44–46.

[111] *Id.* at 46.

[112] Bankr. Case No. 20-11986, Rec. Doc. 636 at 5–8.

[113] Bankr. Case No. 20-11986, Rec. Doc. 648.

16

subject matter jurisdiction, the lack of standing can be raised at any time by a party or by the Court.[114] Therefore, the Court considers this issue, even though it was raised after the Liability Opinion was on appeal.

In LUTPA, the Louisiana legislature declared it to be unlawful to engage in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[115] Because of the broad sweep of this language, "Louisiana courts determine what is a LUTPA violation on a case-by-case basis."[116] The Louisiana Supreme Court has consistently held that in establishing a LUTPA claim, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[117] "[T]he range of prohibited practices under LUTPA is extremely narrow," as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence.[118] Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA.[119] The Fifth Circuit has instructed that LUTPA does not provide an alternate remedy for simple breaches of contract and held that "[t]here is a great deal of daylight

---

[114] *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989)).

[115] La. Rev. Stat. § 51:1405.

[116] Keith E. Andrews, Comment, *Louisiana Unfair Trade Practices Act: Broad Language and Generous Remedies Supplemented by a Confusing Body of Case Law,* 41 Loy. L. Rev. 759, 762 (1996) (hereinafter "Andrews").

[117] *Cheramie Servs., Inc. v. Shell Deepwater Prod.,* 09–1633, p. 11 (La. 4/23/10), 35 So. 3d 1053, 1059.

[118] *Id.*; Andrews, 41 Loy. L. Rev. at 763.

[119] *See, e.g., Cheramie Servs.,* 09–1633 at p. 12, 35 So. 3d at 1060 ("[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA."); *Vermilion Hosp., Inc. v. Patout,* 05–82, p. 6 (La. App. 3 Cir. 6/8/05), 906 So. 2d 688, 693 (noting that not all violations of the Louisiana Code of Ethics give rise to a cause of action under LUTPA and that persons aggrieved by such violations of the code of ethics are permitted to file a complaint with the Louisiana Board of Ethics or seek remedies under other statutes).

between a breach of contract claim and the egregious behavior the statute proscribes."[120]

In the Liability Opinion, the Bankruptcy Court found that a LUTPA right of action is available to "any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and thus no special relationship is a prerequisite to such a cause of action.[121] Based on the evidence presented at trial, the Bankruptcy Court found "the fraudulent actions taken by Dr. Alden, including but not limited to his forgeries of documents designed to strip Perry of his ownership of properties without Perry's knowledge or consent, reach the level of egregiousness that is sanctionable" under LUTPA.[122] Therefore, the Bankruptcy Court concluded that Perry had demonstrated that Dr. Alden employed "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and thus found Dr. Alden to be liable under LUTPA.[123]

On appeal Dr. Alden primarily relies on two cases decided by the United States Court of Appeals for the Fifth Circuit to argue that Perry did not have standing to raise the LUTPA claim. In *Orthopedic Sports Injury Clinic v. Wang Labs, Inc.*, the Fifth Circuit held that businesses who are not competitors do not have standing to bring a claim under LUTPA.[124] In a subsequent opinion, the Fifth Circuit held that "LUTPA's private right of action is limited to direct consumers

---

[120] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

[121] Bankr. Case No. 20-11986, Rec. Doc. 433 at 58 (quoting *Cheramie Servs.,* 09–1633 at p. 6, 35 So. 3d at 1057).

[122] *Id.*

[123] *Id.*

[124] 922 F.2d 220, 225–26 (5th Cir. 1991).

or to business competitors."[125]

Following those decisions by the Fifth Circuit, in *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.* a plurality of the Louisiana Supreme Court held that LUTPA claims are not restricted to these two groups.[126] The Fifth Circuit has not directly addressed its prior holdings since the *Cheramie* opinion was released. However, the Fifth Circuit has cited *Cheramie* approvingly for the proposition that LUTPA grants a right of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice."[127] State appellate courts in Louisiana have reconsidered their prior interpretations of LUTPA following the *Cheramie* decision to comport with the more inclusive interpretation of the statute.[128] Judges in this district have consistently done the same.[129]

A federal court sitting in diversity is required to apply the law of the state, as declared by its legislature or the state's highest court.[130] The Louisiana Supreme Court's opinion in *Cheramie*

---

[125] *Tubos de Acero de México, S.A. v. American Intern. Inv. Corp., Inc.*, 292 F.3d 471, 480 (5th Cir. 2002).

[126] *Cheramie Servs., Inc.*, 35 So. 3d at 1057 ("LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss.").

[127] *Cenac v. Orkin, L.L.C.*, 941 F.3d 182, 194 (5th Cir. 2019). *See also Sabre Indus., Inc. v. Module X Sols.*, L.L.C., No. 23-30122, 2023 WL 8676273, at *1 (5th Cir. Dec. 15, 2023) (LUTPA "grants a right of action to any person ... who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.").

[128] *See Jones v. Americas Ins. Co.*, 2016-0904 (La. Ct. App. 1 Cir. 8/16/17), 226 So. 3d 537, 544; *J. A. Davis Props., LLC v. Martin Operating P'ship, LP*, 2017-449 (La. Ct. App. 3 Cir. 6/21/17), 224 So. 3d 39, 43; *Prime Ins. Co. v. Imperial Fire & Cas. Ins. Co.*, 2014-0323 (La. Ct. App. 4 Cir. 10/1/14), 151 So. 3d 670, 678; *Hurricane Fence Co., Inc. v. Jensen Metal Prods., Inc.*, 12-956 (La. Ct. App. 5 Cir. 5/23/13), 119 So. 3d 683, 688; *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128, 1132.

[129] *See First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 405 (E.D. La. 2016); *Max Access, Inc. v. Gee Cee Co. of LA*, Case No. 15-1728, 2016 WL 454389 (E.D. La. Feb. 5, 2016); *NOLA Fine Art v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 612 (E.D. La. 2015); *Burgers v. Bickford*, Case No. 12-2009, 2014 WL 4186757, at *3 (E.D. La. Aug. 22, 2014).

[130] *See Erie v. Tompkins*, 304 U.S. 64 (1938).

is not binding because it is a plurality opinion. Nevertheless, *Cheramie* is instructive to the federal court sitting in diversity. In light of *Cheramie* and the well-reasoned decisions of Louisiana appellate courts following the same, the Court finds that Perry had standing to bring a LUTPA claim.

Louisiana law does not require that Perry be a consumer or business competitor of Dr. Alden. Moreover, even if it did, the Bankruptcy Court made the factual finding that Dr. Alden and Perry entered a lender/borrower relationship, which suggests that Perry was a consumer of Dr. Alden.[131] The Alden Entities also suggest that Perry's remedy was for breach of contract, not under LUTPA. The Alden Entities are correct that LUTPA does not provide an alternate remedy to simple breaches of contract.[132] The factual findings made by the Bankruptcy Court go beyond simple breach of contract. The Bankruptcy Court found that Dr. Alden committed fraud, which is the type of egregious conduct that is sanctionable under LUTPA.[133] Specifically, the Bankruptcy Court found that Dr. Alden forged documents designed to strip Perry of his ownership of properties without Perry's knowledge or consent.[134] Therefore, the Alden Entities have not shown that the Bankruptcy Court erred in finding that Dr. Alden was liable to Perry under LUTPA.

### 2. Prescription/Peremption

Second, the Alden Entities argue that the Bankruptcy Court lacked subject matter jurisdiction over Perry's LUTPA claims because the claims were prescribed or perempted at the

---

[131] Bankr. Case No. 20-11986, Rec. Doc. 433 at 58.

[132] *Turner*, 989 F.2d at 1422.

[133] *Cheramie Servs.,* 09–1633 at p. 12, 35 So. 3d at 1060.

[134] Bankr. Case No. 20-11986, Rec. Doc. 433 at 59.

time of the Reconventional Demand.[135] Perry contends that prescription was interrupted due to Dr. Alden's ongoing commission of fraud against Perry.[136]

Dr. Alden raised the prescription issue for the first time on March 5, 2025, in opposition to Perry's Motion to Amend Judgment, which was filed by Perry in response to the Damages Opinion after the Alden Entities had already filed multiple appeals of the Liability Opinion.[137] During the hearing on that motion, the Bankruptcy Court declined to rule on the prescription issue because the Liability Opinion was already on appeal.[138]

It appears that the Alden Entities waived the prescription defense. Generally, in federal court a statute of limitations defense is waived if it is not first raised before the trial court. In *McArdle v. Dell Products, L.P.*, the Fifth Circuit held that the defendant waived a statute of limitations defense by mentioning the defense in the answer, but not raising it again until the appeal.[139] The Fifth Circuit stated, "[t]o preserve an issue for appeal, 'the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court had an opportunity to rule on it, we will not address it on appeal.'"[140] Similarly, the Alden Entities did not raise the statute of limitations defense to such a degree that the Bankruptcy Court had an opportunity to rule on it. The issue was raised for the first time in an opposition to a Motion to Amend Judgment, which was filed in the

---

[135] Rec. Doc. 23 at 32.

[136] Rec. Doc. 27 at 47.

[137] Bankr. Case No. 20-11986, Rec. Doc. 636 at 5–8.

[138] Bankr. Case No. 20-11986, Rec. Doc. 648.

[139] *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 336 n.2 (5th Cir. 2008).

[140] *Id.* (quoting *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1997)).

Bankruptcy Court long after the Liability Opinion was on appeal. For these reasons, the Court is not inclined to rule on the merits of the prescription argument.[141]

The Alden Entities attempt to get around their failure to raise prescription below by arguing that the issue is jurisdictional.[142] Generally, statutes of limitation are not jurisdictional.[143] The Alden Entities have not cited any authority to support their argument that the prescription defense is jurisdictional. Therefore, it appears that the defense was waived because it was not properly raised before the Bankruptcy Court.

Even assuming that the Alden Entities properly preserved this argument for appeal, they have not demonstrated that the LUTPA claim had prescribed. Louisiana Revised Statutes § 51:1409(E) originally provided that a "private LUTPA action 'shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.'"[144] Despite its plain terms, a number of courts interpreting this provision held that this one-year time period

---

[141] Louisiana appellate courts have found that prescription can be raised for the first time on appeal. *Nelson v. Rite Aid Hdqtrs. Corp.*, 2002-2042 (La. App. 1 Cir. 6/27/03), 873 So. 2d 16, 17. "Federal courts apply Louisiana prescription law to diversity actions which Louisiana law governs, as 'state statutes of limitations are considered substantive for purposes of *Erie* analysis.'" *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 791 (5th Cir. 2021) (quoting *Vincent v. A.C. & S., Inc.*, 833 F.2d 553, 555 (5th Cir. 1987)). However, federal courts are "bound by federal procedural rules, including those governing issue preservation." *Learmonth v. Sears, Roebuck & Co.*, 710 F.3d 249, 256 (5th Cir. 2013) (quoting *Huss v. Gayden*, 991 So. 2d 162, 165 (Miss. 2008) (although the operation of a Mississippi limitations defense in a federal proceeding is a matter of substantive law, the "issue of whether the defense is raised, preserved or should be barred . . . [is] controlled by federal procedural law"). Therefore, federal procedural law governs this issue.

[142] Rec. Doc. 24-3 at 6 ("The bottom line is that regardless of the application of peremption or prescription, Mr. Perry's LUTPA's claims are untimely and Mr. Perry's right to assert a LUTPA claim was destroyed. The bankruptcy court, as a result, lacked subject matter jurisdiction.").

[143] *See Villegas v. Noem*, 149 F.4th 554, 562 (5th Cir. 2025) (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (courts should conduct a "clear statement" test, under which a time bar is jurisdictional only when "traditional tools of statutory construction . . . plainly show that Congress imbued a procedural bar with jurisdictional consequences.").

[144] *Law Indus., LLC v. Dep't of Educ.*, 2023-00794 (La. 1/26/24), 378 So. 3d 3, 10 n.2 (quoting La. Rev. Stat. § 51:1409(E) (2006)).

was peremptive, rather than prescriptive.[145] As a matter of law, a peremptive period may not be renounced, interrupted, or suspended.[146] Effective August 1, 2018, however, § 51:1409(E) was amended to provide that a LUTPA cause of action "shall be subject to a *liberative prescription* of one year running from the time of the transaction or act which gave rise to this right of action."[147] Following the amendment, the Louisiana Supreme Court reversed an "appellate court ruling, holding that [Section] 51:1409(E) sets forth a peremptive period rather than a liberative prescriptive period."[148]

Both the Fifth Circuit and Louisiana appellate courts have recognized that the continuing tort doctrine applies to LUTPA claims.[149] The question of what "constitutes a continuing tort is partially 'a conduct-based inquiry, with the court asking whether the tortfeasor perpetuates the inquiry through overt, persistent, and ongoing acts.'"[150] "'A continuing tort is occasioned by [ongoing] unlawful acts, not the continuation of the ill effects of an original, wrongful act."[151] "'The continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury.'"[152] "Accordingly, 'there must be a continuing duty owed to the

---

[145] *Id.* (collecting cases).

[146] La. Civ. Code art. 3461.

[147] *Law Indus., LLC*, 378 So. 3d at 10 n.2 (citing La. Rev. Stat. § 51:1409 (E)).

[148] *Id.* at 10.

[149] *Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 Fed. App'x 289, 294–95 (5th Cir. 2019); *Bottinelli Real Estate, L.L.C. v. Johns Manville, Inc.*, 2019-0619 (La. App. 4 Cir. 12/27/19), 288 So. 3d 179, 187; *Bihm v. Deca Sys., Inc.*, 2016-0356 (La. App. 1 Cir. 8/8/17), 226 So. 3d 466, 489.

[150] *Caldwell Wholesale Co.*, 781 Fed. App'x at 294 (quoting *Young v. United States*, 727 F.3d 444, 448 (5th Cir. 2013)) (cleaned up).

[151] *Id.* (quoting *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999)).

[152] *Id.* (quoting *Crump*, 737 So. 2d at 729 n.7).

plaintiff and a continuing breach of that duty by the defendant.'"[153]

The party raising prescription ordinarily bears the burden of proof.[154] "Only if prescription is evident from the face of the pleadings will the plaintiff bear the burden of showing an action has not prescribed."[155] "[A]ppellate courts strictly construe the statutes against prescription and in favor of the claims that is said to be extinguished."[156]

Perry filed a First Amended Answer and Reconventional Demand in the Adversary Proceeding on August 23, 2021.[157] This was the first time that Perry raised the LUTPA claims. The Alden Entities argue that the LUTPA claims are prescribed because the last event mentioned in the Reconventional Demand was the signing of Promissory Note No. 5 on November 24, 2017, nearly four years earlier.[158]

The Bankruptcy Court concluded that Dr. Alden forged the Westbank Expressway Quit Claim Deed, Promissory Note No. 7, the Procuration, and the 9th Street Joint Venture Agreement. It appears that all of these documents were forged sometime in 2017, and the Quit Claim Deed was recorded in Jefferson Parish on May 29, 2019.[159] On January 29, 2021, the Alden Entities filed seven Proofs of Claim in Perry's bankruptcy case. As discussed in detail in the Bankruptcy Court's Liability Opinion, the Alden Entities relied on the forged documents to support three of their Proofs

---

[153] *Id.* (quoting *Crump*, 737 So. 2d at 728).

[154] *Tr. for Melba Margaret Schwegmann v. Schwegmann Fam. Tr.*, 2009-968 (La. App. 5 Cir. 9/14/10), 51 So. 3d 737, 742.

[155] *Id.*

[156] *Id.*

[157] Bankr. Case No. 21-1002, Rec. Doc. 20.

[158] Rec. Doc. 24-3 at 3–4.

[159] Bankr. Case No. 20-11986, Proof of Claim 25-1, Part 6.

of Claim.[160] By holding these forged documents out to be valid and enforceable agreements, the Bankruptcy Court found that Dr. Alden committed fraud against Perry and violated LUTPA.

In *Bihm v. Deca Systems, Inc.*, the Louisiana First Circuit Court of Appeal found a continuing violation of LUTPA that suspended the limitations period.[161] There, a corporation filed a reconventional demand against former employees seeking damages under LUTPA arising out of the employees' misappropriation of funds and intellectual property.[162] The Louisiana First Circuit Court of Appeal found that the former employees had the duty to refrain from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.[163] The court reasoned that each and every time the former employees used the data and other trade secret information taken from the company, it constituted a separate breach of that duty.[164] Because the wrongful acts continued through the date of the litigation, the court concluded that the LUTPA claim had not prescribed.[165]

Here, the Bankruptcy Court found that Dr. Alden breached a special relationship of trust by forging documents designed to strip Perry of his ownership of properties without Perry's knowledge or consent.[166] The Bankruptcy Court also found that Dr. Alden committed fraud against Perry because his deception was intended to obtain an unjust advantage for Dr. Alden and to cause

---

[160] Bankr. Case No. 20-11986, Rec. Doc. 433 at 41–53 (Proofs of Claim 25, 31, 32).

[161] 2016-0356 (La. App. 1 Cir. 8/8/17), 226 So. 3d 466, 489.

[162] *Id.* at 474.

[163] *Id.* at 489.

[164] *Id.*

[165] *Id.*

[166] Bankr. Case No. 20-11986, Rec. Doc. 433 at 59.

Perry to lose his ownership of certain properties.[167] All of the documents that the Bankruptcy Court concluded were forgeries were attached to the Alden Entities' various Proofs of Claim, as a means to fraudulently recoup funds from Perry. By continuing to assert the forged documents as a basis for recovery against Perry, Dr. Alden continued to commit fraud against Perry and that fraud caused Perry's injury.[168] Louisiana law creates a general legal duty not to commit fraud, and the evidence submitted to the Bankruptcy Court established that Dr. Alden continued to violate that duty by filing forged documents into court records to obtain an unjust advantage. The evidence showed that Dr. Alden continued to violate LUTPA until at least January 29, 2021, when the Proofs of Claim were filed. Therefore, the Alden Entities have not demonstrated that LUTPA claims, which were raised less than one year later on August 23, 2021, had prescribed.

### 3. Damages Causation

Third, the Alden Entities assert that the Bankruptcy Court erred in finding that all of Perry's damages were caused by Dr. Alden.[169] Specifically, the Alden Entities argue that the Bankruptcy Court erred in crediting the testimony of Perry, other fact witnesses called by Perry, and expert witness Patrick Gros.[170]

#### a. Perry's Testimony

The Alden Entities cite inconsistencies in Perry's testimony to support their argument that

---

[167] *Id.* at 58. "[F]raud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Benton v. Clay,* 48,245 (La. App. 2 Cir. 8/7/13), 123 So. 3d 212, 219.

[168] *See Caldwell Wholesale Co.*, 781 Fed. App'x at 294 ("'The continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury.' Accordingly, 'there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant.'").

[169] Rec. Doc. 23 at 32.

[170] *Id.*

the Bankruptcy Court erred in finding Perry to be a "generally credible" witness.[171]

The Bankruptcy Court's findings of fact are reviewed for clear error.[172] "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."[173] The reviewing court gives "deference to the bankruptcy court's determinations of witness credibility."[174] The Alden Entities argue that Perry's testimony was not credible because he minimized and ignored substantial other debts in his trial testimony and blamed his financial position on Dr. Alden. The Bankruptcy Judge was well aware of all of Perry's debts as she presided over the Perry's bankruptcy case since its inception in 2020. In light of the deferential standard of review, the Bankruptcy Court's finding that Perry was a "generally credible and earnest witness"[175] is not clearly erroneous.

> b.      *Fact Witnesses' Testimony*

The Alden Entities contend that the other fact witnesses who testified during the trial did not have any knowledge of Perry's financial difficulties, his floundering car business, his IRS debts, or the fact that Dr. Alden loaned Perry money.[176] At trial, Perry offered testimony of his girlfriend, his daughter, his cousin, his high school classmate, a former neighbor, and an acquaintance, who all testified to changes in Perry's demeanor due to ongoing litigation with Dr. Alden.[177] In the Damages Opinion, the Bankruptcy Court relied on this fact testimony to conclude

---

[171] *Id.* at 33–42.

[172] *In re Duncan*, 562 F.3d 688, 694 (5th Cir. 2009).

[173] *Id.* (internal citations and quotation marks omitted).

[174] *Id.* at 695.

[175] Bankr. Case No. 20-11986, Rec. Doc. 616 at 4.

[176] Rec. Doc. 23 at 42–45.

[177] Bankr. Case No. 20-11986, Rec. Doc. 616 at 5–6.

that Perry suffered "very real emotional distress and mental anguish attributable to Dr. Alden's fraud" and LUTPA violations.[178] The Alden Entities suggest that the Bankruptcy Court should not have relied on this testimony because the witnesses were not aware of Perry's other substantial debts. The Bankruptcy Court heard all of the testimony and found that Perry suffered emotional distress and mental anguish. This factual finding was not clearly erroneous.

### c.   Patrick Gros's Testimony

The Alden Entities also argue that the Bankruptcy Court erred in crediting the testimony of Patrick Gros, an expert in accounting and financial analysis.[179] According to the Alden Entities, Gros's testimony was speculative, biased, inconsistent, used improper methodology, improper calculations, and was borderline hypothetical.[180]

Before trial, the Alden Entities filed two Motions in Limine seeking to exclude the testimony of Gros.[181] In the first motion, the Alden Entities asserted that Gros had a conflict of interest or bias against Dr. Alden.[182] According to the motion, Dr. Alden served on the board of a non-profit, St. Francis Animal Sanctuary, which employed Gros as an accountant.[183] Gros failed to file necessary paperwork for the non-profit, causing St. Francis to lose approximately $300,000.00 in tax exempt donations, and Dr. Alden suggested that Gros be terminated for dereliction of duty.[184] In response to the motion, Gros submitted an affidavit stating that he had

---

[178] *Id.* at 18–20.

[179] Rec. Doc. 23 at 45.

[180] *Id.*

[181] Bankr. Case No. 21-1002, Rec. Docs. 110, 259.

[182] Bankr. Case No. 21-1002, Rec. Doc. 110.

[183] *Id.* at 4.

[184] *Id.*

never personally met Dr. Alden, and although he was terminated by St. Francis in 2015 he continued to complete the books for 2015 and prepare tax returns for 2015.[185] The Bankruptcy Court denied the motion, finding no evidence to suggest "that any sort of confidential information about Dr. Alden personally was relayed to [Gros], such that he would have some sort of prejudice or conflict here."[186]

Federal courts have the inherent power to disqualify experts, but cases that grant disqualification are rare.[187] In disqualification cases other than those in which the expert clearly switched sides, the Fifth Circuit has adopted a two-part test: (1) "was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?"; and (2) "was any confidential or privileged information disclosed by the first party to the expert?"[188] "Only if the answers to both questions are affirmative should the witness be disqualified."[189] The alleged bias of an expert witness is typically not a ground for exclusion but a matter which goes to the weight of the opinions offered.[190]

The Alden Entities have not shown that the Bankruptcy Court erred in denying the first Motion in Limine. The Alden Entities do not present any evidence to contradict the Bankruptcy Court's factual finding that no confidential information about Dr. Alden was relayed to Gros, such that he would have some sort of prejudice or conflict against Dr. Alden.

---

[185] Bankr. Case No. 21-1002, Rec. Doc. 136.

[186] Bankr. Case No. 20-11986, Rec. Doc. 354 at 6.

[187] *Koch Ref. Co. v. Jennifer L. Boudreau M/V*, 85 F.3d 1178, 1181 (5th Cir. 1996)

[188] *Id.*

[189] *Id.*

[190] *Roake v. Brumley*, 756 F. Supp. 3d 219, 238 (M.D. La. 2024) *reversed on other grounds*, No. 24-30706, 2026 WL 482555 (5th Cir. Feb. 20, 2026). *See also Seshadri Raju, M.D., P.A. v. Medtronic, Inc.*, No. 17- 357, 2021 WL 1232102, at *7 (S.D. Miss. Mar. 31, 2021).

In the second Motion in Limine, the Alden Entities argued that Gros's third supplemental expert report, which was produced on January 30, 2024, was untimely.[191] Rule 26(e)(2), which applies in adversary proceedings in bankruptcy,[192] permits supplementation of an expert report, but "[a]ny additions or changes to [the] information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."[193] Under Rule 26(a)(3), "these disclosures must be made at least 30 days before trial."[194] The supplemental report was produced approximately two and a half months before the April 2024 trial. The Alden Entities have not shown that the Bankruptcy Court erred in denying the second Motion in Limine.

Further, the admission of expert testimony in violation of Rule 26(a) is subject to harmless error analysis.[195] Even assuming that a violation of Rule 26(a) occurred, the Alden Entities have not shown that they were prejudiced by the admission of Gros's testimony. Perry produced three expert reports from Gros during this litigation, on February 11, 2022, January 4, 2024, and January 30, 2024, and Gros was deposed by the parties before trial. Therefore, even assuming that some violation of Rule 26(a) occurred, the error was harmless.

On appeal, the Alden Entities also argue that Gros's methodology was unreliable.[196] Based on Gros's testimony, the Bankruptcy Court found that Perry suffered actual losses of $190,046 in 2017 as a result of the fraud and LUTPA violations committed by Dr. Alden.[197] Gros reviewed the

---

[191] Bankr. Case No. 21-1002, Rec. Doc. 259.

[192] *See* Fed. R. Bankr. P. 7026 ("Fed. R. Civ. P. 26 applies in an adversary proceeding.").

[193] Fed. R. Civ. P. 26(e)(2).

[194] Fed. R. Civ. P. 26(a)(3).

[195] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004).

[196] Rec. Doc. 23 at 45.

[197] Bankr. Case No. 20-11986, Rec. Doc. 616 at 8.

Schedule Cs of Perry's tax returns, finding abnormally high loss in 2017 due to losses at Perry's business, Deals on Wheels.[198] Gros calculated the net loss in 2017 to be $235,928, whereas the average net loss for 2014–2016 and 2018 was $45,882.[199] After subtracting the average loss for the years surrounding 2017 from the net loss experienced in 2017, Gros calculated the excess loss for 2017 to be $190,046.[200] Gros and Perry attributed those excess losses to several factors: (1) lack of working capital from real estate transactions due to fraudulent encumbrances by Dr. Alden; (2) redirection of time and focus from Deals on Wheels to selling immovable properties to attempt to satisfy alleged debt owed to Dr. Alden; and (3) financial pressure from Dr. Alden related to the payment of the NextGear Promissory Note secured by the Collateral Mortgage.[201]

The Bankruptcy Court accepted this uncontroverted testimony.[202] The Alden Entities have not shown that this factual finding was clearly erroneous. "[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility," and should be left for the finder of fact.[203] The problems the Alden Entities cite with Gros's testimony go to the weight of the evidence, not its admissibility. The weaknesses that the Alden Entities point out in Gros's testimony are weaknesses that they also highlighted for the Bankruptcy Court. The Bankruptcy Court was the finder of fact in this case, and the decision to credit the testimony of Gros was not clearly erroneous.

---

[198] *Id.* at 7.

[199] *Id.* at 8.

[200] *Id.*

[201] *Id.* at 7.

[202] *Id.* at 8.

[203] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Bankruptcy Court also accepted Gros's expert opinion that Perry suffered a total loss of $83,837 for the forced liquidation/surrendering of vehicles as a direct result of Dr. Alden's fraud and violations of the LUTPA.[204] Due to the fraudulent encumbrances placed by Dr. Alden on Perry's immovable properties and pressure placed on Perry by Dr. Alden to pay alleged debts by preparing properties to be sold, the Bankruptcy Court found Perry lost significant rental income, which was the primary source of funding of operations at Deals on Wheels during slow sales periods.[205] Perry was then forced to liquidate or surrender twenty automobiles for below-market value, and Gros calculated the loss of each vehicle Perry sold or surrendered at a discount by subtracting the actual sale price of each vehicle from the upper limit of the "Fair Market Range" from the 2024 Kelley Blue Book for each vehicle's make and model.[206]

The Alden Entities take issue with this testimony because Gros did not know the condition of the vehicles and used the "highest value of a vehicle" when calculating these damages.[207] Gros used the 2024 Kelley Blue Book valuations because the 2019 market value information was not available. Because used cars depreciate over time, the Bankruptcy Court noted that 2024 Kelly Blue Book valuations already reflect each vehicle's depreciation in years since 2019.[208] Dr. Alden presented no contradictory expert evidence.[209] The Alden Entities have not shown that these factual findings were clearly erroneous.

---

[204] Bankr. Case No. 20-11986, Rec. Doc. 616 at 9.

[205] *Id.* at 8.

[206] *Id.*

[207] Rec. Doc. 52.

[208] Bankr. Case No. 20-11986, Rec. Doc. 616 at 9.

[209] *Id.*

The Bankruptcy Court also assessed damages against Dr. Alden for a fraudulent lease on Perry's 9th Street Property.[210] Perry originally leased the property to Dr. Alden's employee, Darryl Fish, in 2017 for a monthly rent of $350 in cash payment and $600 in monthly labor to be performed by Fish in renovating the property.[211] The Bankruptcy Court found that Dr. Alden fraudulently executed the Second 9th Street Lease with Fish, thereby illegally encumbering the 9th Street Property from September 1, 2019 until September 2021, when Fish vacated the property.[212] With respect to damages caused by lost rent on the 9th Street Property, the Bankruptcy Court did not credit Gros's testimony.[213] Instead, the Bankruptcy Court found the best evidence of the amount of monthly rent a new renter would have paid is the monthly cash rent owed under the First 9th Street Lease.[214] Therefore, the Bankruptcy Court found that, due to his fraudulent acts perpetrated against Perry related to the Second 9th St. Lease, Dr. Alden was jointly and solidarily liable with Darryl Fish to Perry for damages in the total amount of $8,400.00, representing $350.00 per month for 24 months.[215] The Alden Entities take issue with these factual findings, but they have not shown the factual findings were clearly erroneous.

Lastly, Gros opined and the Bankruptcy Court found that Perry lost $58,050 in rent on the vacant Westbank Expressway Lot because Dr. Alden fraudulently encumbered the lot with a forged Quit Claim Deed.[216] In 2017, Perry had the Lot listed for sale with a pending offer to

---

[210] *Id.* at 9–10.

[211] *Id.* at 9.

[212] *Id.* at 9–10.

[213] *Id.* at 10.

[214] *Id.*

[215] *Id.*

[216] Bankr. Case No. 20-11986, Rec. Doc. 616 at 11.

purchase for $47,000.[217] In exchange for $22,000, Perry agreed to cancel the sale and relist the Lot

for $79,500, with half of the proceeds to go to Dr. Alden.[218] The Bankruptcy Court found that Dr.

Alden then forged a quit claim deed transferring the full ownership of the Lot to himself.[219]

In calculating Perry's damages due to the deprivation of his ownership interest in the Lot,

Gros contacted a realtor to inquire as to rental income that could have been earned during the

period of time in which Alden usurped Perry's ownership interest in the Lot.[220] Gros concluded,

based upon the real estate agent's opinion, that the total loss of potential income was $58,050.[221]

Dr. Alden argues that the comparable lots were not sufficiently similar, but he did not present any

contrary evidence. The Alden Entities have not shown that these factual findings were clearly

erroneous.

### 4.   Factual Findings Regarding Fraud and Forgery

Fourth, the Alden Entities assert that the Bankruptcy Court erred in finding that Dr. Alden

committed fraud and/or forgery.[222] As an initial matter, the Alden Entities argue that Second 9th

Street Lease, Instrument of Procuration and 9th Street Joint Venture were not properly before the

Court due to Perry's earlier Motion to Reject the lease with Fish.[223] However, Dr. Alden attached

the 9th Street Joint Venture to his Proof of Claim No. 25. Similarly, Fish attached the Second 9th

Street Lease to his Proof of Clam No. 22 filed in this case. By filing the Proofs of Claim, Dr. Alden

---

[217] Bankr. Case No. 20-11986, Rec. Doc. 433 at 19.

[218] *Id.*

[219] *Id.* at 20.

[220] Bankr. Case No. 20-11986, Rec. Doc. 616 at 11.

[221] *Id.*

[222] Rec. Doc. 23 at 55.

[223] *Id.* at 55–56.

consented to the jurisdiction of the Bankruptcy Court to resolve the validity and amount of his claims. In the Amended Reconventional Demands, Perry clearly alleged that Dr. Alden committed fraud by forging Perry's signatures on the Procuration and the joint venture agreements.[224] These issues were properly before the Bankruptcy Court.

The Alden Entities also contend that the Bankruptcy Court erred in crediting the opinions of Perry's handwriting expert over the Alden Entities' handwriting expert.[225] Perry points out that the Bankruptcy Court considered the testimony and reports filed by the two competing expert witnesses and concluded that Perry's expert witness's methodology and conclusions were correct.[226] Perry argues that the Bankruptcy Court's findings were supported by the record.[227]

At trial, Perry presented testimony from handwriting expert Adele A. Thonn ("Thonn"). The Bankruptcy Court found Thonn to be a "credible, trustworthy, and earnest expert witness, put[] great stock in her methodology, and [gave] maximum credibility to her expert reports and testimony."[228] The Alden Entities presented testimony from handwriting expert Susan Abbey ("Abbey"). The Bankruptcy Court found "Abbey's testimony to be irrelevant and unhelpful and [gave] little, if any, weight to it."[229] Because Abbey "did not compare Perry's signature across documents purportedly signed by Perry as Adele Thonn did," the Bankruptcy Court found that "Abbey's analysis could not assist the Court in determining whether Perry in fact signed any of

---

[224] Bankr. Case No. 21-1002, Rec. Docs. 20 at 18, 30-1 at 18.

[225] Rec. Doc. 23 at 56–58.

[226] Rec. Doc. 27 at 59.

[227] *Id.* at 59–61.

[228] Bankr. Case No. 20-11986, Rec. Doc. 433 at 8.

[229] *Id.*

the documents specifically."[230] The Bankruptcy Court noted that the issue was not whether the signature on the documents belonged to Perry but whether someone "took a signature page from one document and attached it to other documents without Perry's consent."[231]

The Bankruptcy Court, as the factfinder in this case, was in the best position to determine the credibility of witnesses. In a "battle of the experts," the factfinder "must be allowed to make credibility determinations and weigh the conflicting evidence in order to decide the likely truth of a matter."[232]

Based on Thonn's expert testimony and the fact testimony of Perry, the Bankruptcy Court found that Perry did not sign the Westbank Expressway Quit Claim Deed, Promissory Note No. 7, the Instrument of Procuration, or the 9th Street Joint Venture Agreement.[233] The Bankruptcy Court also found that Perry did not authorize Dr. Alden to use a preprinted copy of his signature to execute those documents.[234] Therefore, the Court found that the documents were fraudulent and forged, with the perpetrator of the fraud being Dr. Alden.[235]

The Alden Entities assert that the Bankruptcy Court should not have credited this testimony because Perry admitted that he signed the Quit Claim Deed in the Answer and Reconventional Demand he filed while the Adversary Proceeding was still pending in state court.[236] An admission

---

[230] *Id.*

[231] *Id.*

[232] *Sugartown United Pentecostal Church Inc. v. Church Mut. Ins. Co.*, No. 23-30072, 2024 WL 62947, at *7 (5th Cir. Jan. 5, 2024) (quoting *Foradori v. Harris*, 523 F.3d 477, 516 (5th Cir. 2008); *Garner v. Santoro*, 865 F.2d 629, 644 (5th Cir. 1989)).

[233] Bankr. Case No. 20-11986, Rec. Doc. 433 at 21, 24–25, 28–30.

[234] *Id.*

[235] *Id.*

[236] Bankr. Case No. 21-1002, Rec. Doc. 1-3 at 2 ("The allegations contained in Paragraph 19 of the petition are admitted in part and denied in part. Defendant Perry admits that he received the sum of Twenty-Two Thousand

in an answer is usually a binding judicial admission that conclusively establishes the fact for the purposes of that case, unless the court allows the judicial admission to be withdrawn.[237] "When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."[238] Here, Perry filed two Amended Reconventional Demands after the case Adversary Proceeding was removed to the Bankruptcy Court.[239] The amended pleadings clearly allege that Dr. Alden committed fraud by forging Perry's signatures on the Quit Claim Deed.[240] The Alden Entities have not shown that the Bankruptcy Court erred in crediting Perry's testimony that he did not sign the Quit Claim Deed. The Alden Entities have not shown that the Bankruptcy Court's factual findings were clearly erroneous.

### B. Issues Raised in the Cross-Appeal

Perry raises five arguments in the cross-appeal. Each argument is addressed in turn.

#### 1. Damages for Fraud

Perry argues that he sought damages on his fraud claim, and the Bankruptcy Court erred in finding that the Reconventional Demand solely sought damages under LUTPA.[241] The Alden Entities point out that the only relief sought for the fraud claim was declaratory relief, which was

---

Dollars ($22,000.00) for acquisition of property in Marrero, Louisiana and that he did sign a Quitclaim Deed which was attached to the petition in this matter.").

[237] *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . A judicial admission is conclusive, unless the court allows it to be withdrawn.").

[238] *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002).

[239] Bankr. Case No. 21-1002, Rec. Docs. 20, 30-1.

[240] *Id.*

[241] Rec. Doc. 27 at 26–32.

awarded by the Bankruptcy Court.[242]

In the Damages Opinion, the Bankruptcy Court found that "Perry asserted a claim for damages, referencing only [LUTPA] as the basis for any award of damages."[243] In Paragraph 105 of the Reconventional Demand Perry alleged that "Alden's actions complained of above violates the Louisiana Unfair Trade Practices Act, allowing Perry to recover treble damages and attorneys' fees."[244] In Paragraphs 106–109, Perry also assert he is entitled to damages because "Alden's actions complained of above" caused financial damage, mental and emotional distress, physical pain and suffering, inconvenience, loss of intellectual or physical enjoyment, and attorneys' fees.[245]

Although a reading of the Reconventional Demand could support Perry's argument that he was seeking damages for all claims, he has not shown that a reversable error occurred. As the Louisiana Supreme Court has found "[t]he purpose of tort damages is to make the victim whole. This goal is thwarted, and the law is violated, when the victim is allowed to recover the same element of damages twice."[246] The Bankruptcy Court awarded damages under LUTPA for loss of profits and/or excess losses on multiple business ventures, infliction of severe psychological and emotional distress, and attorneys' fees.[247] On appeal, Perry argues that he should have been awarded financial damages, emotional distress damages, and attorneys' fees due to Dr. Alden's

---

[242] Rec. Doc. 32 at 11.

[243] Bankr. Case No. 20-11986, Rec. Doc. 616 at 20, n.8.

[244] Bankr. Case No. 21-1002, Rec. Docs. 20 at 21, 30-1 at 21.

[245] Bankr. Case No. 21-1002, Rec. Docs. 20 at 22, 30-1 at 22.

[246] *Bellard v. Am. Cent. Ins. Co.*, 2007-1335 (La. 4/18/08), 980 So. 2d 654, 668.

[247] Bankr. Case No. 20-11986, Rec. Doc. 616 at 22.

fraud.[248] These are the categories of damages that were awarded under LUTPA. Perry has not demonstrated that he proved additional categories of damages that should have been awarded for fraud.

### 2. Joint and Several Liability

Second, Perry asserts the Bankruptcy Court erred in failing to find that the Alden Entities were jointly and severely liable with Dr. Alden for fraud and resulting damages under LUTPA and state law.[249] Perry contends that Dr. Alden committed the fraud acting through his wholly owned limited liability companies and those companies cannot use the corporate veil as a "shield" to the damages arising from Dr. Alden's fraud.[250] The Alden Entities assert that it was appropriate for the Bankruptcy Court not to find the Alden Entities jointly and severally liable with Dr. Alden.[251] The Alden Entities point out that only three of these six entities are even identified in Perry's brief, and the Bankruptcy Court granted Perry's requests for declaratory relief as to those entities.[252]

On April 22, 2025, the Bankruptcy Court denied Perry's Second Amended Motion to Amend Judgment, which sought to amend the judgment to hold all of the Alden Entities liable for the fraud and LUTPA violations, rather than limiting that finding only to Dr. Alden.[253] During the hearing on the motion, the Bankruptcy Court noted that the Reconventional Demand alleged fraud and forgery by Dr. Alden, individually, not against the company defendants.[254] The Bankruptcy

---

[248] Rec. Doc. 27 at 29–32

[249] *Id.* at 32.

[250] *Id.* at 33.

[251] Rec. Doc. 32 at 15.

[252] *Id.* at 16–17.

[253] Bankr. Case No. 20-11986, Rec. Doc. 665.

[254] Bankr. Case No. 20-11986, Rec. Doc. 664.

Court also observed that the fraud and forgery were committed by Dr. Alden, but the Bankruptcy Court acknowledged that Dr. Alden acted "on behalf of some of those entities and moved through some of those entities."[255]

Page 2 of the Reconventional Demand states that it is brought against "Dr. William Alden and his related entities Perry Associates LLC, Crescent City Property Development Association LLC, Crescent City Medical Services, Inc., Private Auto Connection LLC, 4330 State Street Drive LLC, and 1100 So. Jeff Davis LLC (the 'Alden Entities') (William Alden and the Alden Entities are collectively referred to as 'Alden')".[256] The Reconventional Demand asserts that "Alden committed fraud" and "Alden's actions complained of above violate[] the Louisiana Unfair Trade Practices Act."[257]

The Bankruptcy Court's statement that the Reconventional Demand only asserted fraud and LUTPA claims against Dr. Alden, individually, is incorrect. Paragraph 2 of the Reconventional Demand states that it refers to the Alden Entities and Dr. Alden collectively as "Alden." Of course, forgery must be perpetrated by an individual. Nevertheless, if the individual is acting on behalf of a corporation or LLC, the company and the individual may be held liable for fraud.[258] The Bankruptcy Court acknowledged that Dr. Alden acted "on behalf of some of those entities and moved through some of those entities" when he committed the fraud. Therefore, the Bankruptcy Court erred in finding that the Reconventional Demand only brought fraud and LUTPA claims

---

[255] *Id.*

[256] Bankr. Case No. 21-1002, Rec. Docs. 20 at 2, 30-1 at 2.

[257] *Id.* at 18, 21.

[258] *Tubos De Acero De Mexico, SA*, 292 F.3d at 479–80 ("The allegations underlying [the plaintiff's] fraud and conversion claims against [the corporation] and [the individual] would be identical because [the individual] was acting for [the corporation].").

against Dr. Alden, individually, and the Bankruptcy Court's Orders are reversed to the extent that they find the Reconventional Demand only asserted fraud and LUTPA claims against Dr. Alden individually. Additional factual findings are needed on what entities, if any, Dr. Alden was acting on behalf of when he committed the fraud and forgery. Accordingly, the Court remands the case to the Bankruptcy Court for additional proceedings on whether any of the Alden Entities should be held jointly liable with Dr. Alden for fraud or violations of LUTPA.

### 3.   Emotional Distress Damages

Third, Perry argues that the Bankruptcy Court erred in awarding only nominal damages in the amount of $5,000 for his emotional distress.[259] Perry asserts that the Bankruptcy Court awarded modest damages because Perry did not seek medical intervention, but Perry contends that a medical expert is not required to establish emotional damages if the negligence complained of is within the realm of an ordinary lay person's understanding.[260] The Alden Entities contend that the award should not be increased.[261] The Alden Entities point out that Perry has failed to offer any relevant caselaw or quantum of prior general damage awards as guidance.[262]

"General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms."[263] As the Louisiana Supreme Court has observed, vast discretion is

---

[259] Rec. Doc. 27 at 35–36.

[260] *Id.* at 36.

[261] Rec. Doc. 32 at 19.

[262] *Id.* at 19–20.

[263] *Jones v. Mkt. Basket Stores, Inc.*, 2022-00841 (La. 3/17/23), 359 So. 3d 452, 464.

accorded to the trier of fact in fixing general damage awards.[264] "This vast discretion is such that an appellate court should rarely disturb an award of general damages."[265] "Only after a determination that the trier of fact has abused its 'much discretion' is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion."[266]

Perry has not demonstrated that the Bankruptcy Court abused its vast discretion in fixing the emotional distress damages award. Therefore, the Court need not resort to prior awards to determine the highest or lowest point which is reasonably within that discretion.

### 4.    Attorneys' Fees Before the Bankruptcy Court

Fourth, Perry contends the Bankruptcy Court erred in failing to award him attorneys' fees and costs through the end of the trial, and instead only awarded fees and costs qualified prior to the actual trial date.[267] The Alden Entities argue that the Bankruptcy Court appropriately denied the Motions to Amend the Judgment, which sought to increase the award of attorneys' fees and costs.[268] The Alden Entities point out that Perry does not even discuss what amount in attorneys' fees and costs he is seeking.[269]

Louisiana Revised Statute § 51:1409(A) provides that in the event damages are awarded to a plaintiff in a private action under LUTPA, the court "shall award to the person bringing such

---

[264] *Id.*

[265] *Id.*

[266] *Id.*

[267] Rec. Doc. 27 at 38.

[268] Rec. Doc. 32 at 20.

[269] *Id.*

action reasonable attorney fees and costs." Therefore, when a trial court awards damages under

LUTPA, an award of reasonable attorney fees and costs is mandatory.[270] Louisiana appellate courts

have explained that "[t]he mandatory award of reasonable attorney fees and costs under [LUTPA]

sanctions egregious actions involving elements of fraud, misrepresentation, deception, or other

unethical conduct, and is clearly penal in nature."[271] "Where a statutory award of attorney fees is

penal in nature, the value of the attorney fee does not need to be proven."[272] Nevertheless, the

award must be reasonable.[273] An appellate court should only reverse the trial court's factual

findings relating to the reasonableness of an attorneys' fee award when those factual findings are

"clearly wrong" or "manifestly erroneous."[274]

The Bankruptcy Court awarded Perry attorneys' fees in the amount of $209,496.04 and

costs in the amount of $17,879.92.[275] Post-judgment Perry sought to increase the attorneys' fee

award by $32,605.[276] On April 22, 2025, the Bankruptcy Court denied Perry's First Motion to

Amend Judgment, which sought to increase the attorneys' fee award.[277] During the hearing on the

---

[270] *Rincon v. Owens Collision & Repair Serv. Ctr., LLC*, 2018-0383 (La. App. 1 Cir. 9/21/18), 359 So. 3d 990, 1002.

[271] *Id.*

[272] *Id.*

[273] *Id.* Louisiana courts consider ten factors in determining the reasonableness of attorney fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

[274] *Quality Env't Processes, Inc. v. IP Petroleum Co., Inc.*, 2016-0230 (La. App. 1 Cir. 4/12/17), 219 So. 3d 349, 378, *writ denied*, 2017-00915 (La. 10/9/17), 227 So. 3d 833.

[275] Bankr. Case No. 20-11986, Rec. Doc. 616.

[276] Bankr. Case No. 20-11986, Rec. Doc. 624.

[277] Bankr. Case No. 20-11986, Rec. Doc. 658.

motion, the Bankruptcy Court noted that the record on damages was closed and during trial Perry did not reserve his right to seek future fees.[278] Perry has not demonstrated that the Bankruptcy Court's factual findings relating to the reasonableness of an attorneys' fee award are clearly wrong or manifestly erroneous.

### 5.    Attorneys' Fees on Appeal

Fifth, Perry asserts he should be awarded cost and attorneys' fees incurred in this Appeal.[279] He asserts that a plaintiff who is awarded damages and attorneys' fees in an action under the LUTPA and then successfully defends an appeal of that action, is entitled to additional fees incurred in the connection with the appeal.[280] The Alden Entities contend that Perry should not be awarded attorneys' fees and costs for the cross-appeal.[281] To the extent that this Court reverses any of the Bankruptcy Court's findings, the Alden Entities assert Perry is precluded from an additional award of attorneys' fees.[282]

"A plaintiff who is awarded damages and attorney's fees in an action under [LUTPA], and then successfully defends an appeal of that action, is entitled to additional attorney's fees incurred in connection with the appeal."[283] Where a party does not successfully defend all of the issues raised on appeal, Louisiana courts have declined to award additional attorneys' fees on appeal.[284]

---

[278] Bankr. Case No. 20-11986, Rec. Doc. 648.

[279] Rec. Doc. 27 at 39.

[280] *Id.*

[281] Rec. Doc. 32 at 21.

[282] *Id.*

[283] *River Rental Tools, Inc. v. Smith Power Sols., LLC*, 2021-0716 (La. App. 4 Cir. 6/15/22), 342 So. 3d 1052, 1058, *writ denied*, 2022-01076 (La. 10/18/22), 348 So. 3d 728 (citing *Laurents v. Louisiana Mobile Homes, Inc.*, 96-0976, p. 12 (La. App. 3 Cir. 2/5/97), 689 So. 2d 536, 543.

[284] *Id.* at 1058–59.

Moreover, "additional attorney fees may not be granted where the appellate court finds that the amount awarded in the trial court was sufficient to compensate counsel for both the work at the trial court and the appellate court levels."[285]

Perry has successfully defended against the issues raised by the Alden Entities on appeal. Although appellate courts have authority to award fees incurred for the cost of successfully defending an appeal, the Fifth Circuit's "preferred procedure is to remand for the determination of the amount of such an award."[286] Considering that the Court is remanding the case for additional findings on whether the Alden Entities should be held jointly liable with Dr. Alden, the Court also remands the case to allow the Bankruptcy Court to determine in the first instance whether Perry is entitled to attorneys' fees incurred in successfully defending against this appeal and, if so, the proper amount of those fees.

## V. Conclusion

For the reasons discussed above, the Court affirms the Bankruptcy Court's Orders in part and reverses in part. The Bankruptcy Court's Orders are reversed to the extent that they find the Reconventional Demand only asserted fraud and LUTPA claims against Dr. Alden individually. The case is remanded to the Bankruptcy Court for additional proceedings on: (1) whether any of the Alden Entities should be held jointly liable with Dr. Alden for fraud or violations of LUTPA and (2) whether Perry is entitled to attorneys' fees incurred in successfully defending against the Alden Entities' appeals and, if so, the proper amount of those fees. Accordingly,

---

[285] *Fam. Care Servs., Inc. v. Owens*, 45,505 (La. App. 2 Cir. 8/11/10), 46 So. 3d 234, 244.

[286] *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*, 93 F.4th 870, 879 (5th Cir. 2024) (internal citations omitted). *See also Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2021 WL 5833967, at *1 (E.D. La. Dec. 9, 2021) (LUTPA case remanded from the Federal Circuit for a determination by the district court of whether the appellee was entitled to attorneys' fees incurred in defending against the appeal and, if so, the proper amount of those fees).

**IT IS ORDERED** that the Bankruptcy Court's Liability Opinion, Damages Opinion, and Orders on the Motions to Amend Judgment are **AFFIRMED IN PART and REVERSED IN PART**. The Bankruptcy Court's Orders are reversed to the extent that they find the Reconventional Demand only asserted fraud and LUTPA claims against Dr. Alden individually.

**IT IS FURTHER ORDERED** that the case is remanded to the Bankruptcy Court for additional proceedings on: (1) whether any of the Alden Entities should be held jointly liable with Dr. Alden for fraud or violations of LUTPA and (2) whether Perry is entitled to attorneys' fees incurred in successfully defending against the Alden Entities' appeals and, if so, the proper amount of those fees.

**NEW ORLEANS, LOUISIANA**, this __30th__ day of March, 2026.

_____

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**